IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CLIFTON JACKSON, N66027,** | ) |
| | ) |
| **Plaintiff,** | ) |
| vs. | ) Case No. 22-cv-00147-SMY |
| | ) |
| **WEXFORD HEALTH SERVICES,** | ) |
| **DEANNA BROOKHART,** | ) |
| **SERGEANT SEED,** | ) |
| **NURSE ULREY,** | ) |
| **NURSE PRACTIONER LUKING,** | ) |
| and **JOHN/JANE DOE 1,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Clifton Jackson, an inmate in the custody of the Illinois Department of Corrections and currently incarcerated at Vienna Correctional Center, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations stemming from the revocation of his low bunk permit at Lawrence Correctional Center. (Doc. 19). The Amended Complaint must be screened under 28 U.S.C. § 1915A, which requires the dismissal of any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. 28 U.S.C. § 1915A(a)-(b).

## Amended Complaint

Plaintiff makes the following allegations in the Amended Complaint (Doc. 19, pp. 8-18): Plaintiff was issued a low bunk permit for an indefinite duration following foot and ankle surgery. When he arrived at Lawrence Correctional Center on February 10, 2021, Plaintiff was initially assigned to a low bunk in Cell 16 of Unit R4-A-L. The same day, Sergeant Seed moved him to Cell 3, where Plaintiff discovered another inmate occupying the low bunk. Plaintiff produced a

1

copy of his low bunk permit to the occupant, who produced a copy of his own permit in response. Plaintiff informed Sergeant Seed that both inmates required a low bunk. She agreed to "go make some calls" but later informed Plaintiff that Nurse Practitioner Luking decided he no longer qualified for a low bunk and cancelled his permit. (*Id*. at 10).

Plaintiff was assigned to the top bunk of Cell 3. When he objected due to the risk of further injury, the sergeant threatened to issue him a ticket for refusing a direct order. Plaintiff reluctantly moved into the cell but filed a grievance asking Warden Brookhart and the health care unit (HCU) staff to "fix the situation." (*Id*. at 11). Several days later, Plaintiff was seen in the HCU, given ibuprofen, and placed on the doctor call line.

Plaintiff submitted additional requests for a doctor's appointment to treat his "constant pain" on February 15, 2021, February 21, 2021, February 28, 2021, and March 4, 2021. His requests went unanswered. Plaintiff spoke directly to Warden Brookhart and Major Whalyn, who notified the HCU of his complaints.

By March 7, 2021, Plaintiff's ibuprofen was depleted. In need of additional pain relief and treatment, he filed an emergency grievance complaining of "extreme pain," requesting a doctor's treatment "A.S.A.P.," and seeking restoration of his medical permit. Warden Brookhart denied the grievance as unsubstantiated on March 11, 2021.

Plaintiff's pain became unmanageable, and his risk of injury increased. He began sleeping on the floor to avoid falling from the top bunk. But, a member of the third shift security staff (John/Jane Doe) forced him to return to the top bunk to stop "screwing up [the] count." (*Id*. at 13). The top bunk had no ladder and no other physical support.

On April 24, 2021, Plaintiff fell while climbing down from the top bunk. He hit his head and neck against a wall, and the air was knocked from his lungs. As he lay on the floor in extreme

pain and gasping, Sergeant Stanley rushed into the room and called an emergency code for medical. Plaintiff could not move when medical staff ordered him to get up and sit in a wheelchair for transport to the HCU. He was instead taken to the HCU on a stretcher, where he was administered a shot for pain before being transported by ambulance to a hospital emergency room. He underwent several tests and was given a second shot, muscle relaxers, and pain medication before returning to Lawrence.

Upon his return Sergeant Johnson consulted with Nurse Ulrey to determine the appropriate placement for Plaintiff, and the nurse said Plaintiff should "stop acting like a pus*y and go get on the top bunk." (*Id*. at 16). Sergeant Johnson relayed this message to Plaintiff before Nurse Ulrey assigned him to C-Ward for observation by a doctor that night. Plaintiff remained in the infirmary for six days until April 30, 2021, when he was issued a new low bunk / low gallery permit and released from the infirmary. Plaintiff filed a second grievance to complain about the conduct of Wexford and Lawrence officials, pointing out that he was only issued a new medical permit after he fell and injured himself. He seeks injunctive,[1] declaratory, and monetary relief.

## Preliminary Dismissals

Plaintiff mentions the following individuals in his statement of claim but does not name them as parties in the case caption of his Amended Complaint: Major Whalyn, Sergeant Stanley, and Sergeant Johnson. When parties are not named in the case caption or list of defendants, this Court does not treat them as defendants. *See* FED. R. CIV. P. 10(a) (title of complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party, a defendant must be "specif[ied] in the caption"). Therefore, any claims against these individuals are considered dismissed without prejudice.

---

[1] Plaintiff specifically requests reinstatement of the original permit. (*Id*. at 19).

**Discussion**

Turning to the allegations in the Amended Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's serious medical need for a low bunk permit from February to April 2021.

Count 2: Eighth Amendment claim against Defendants for unconstitutional conditions of confinement because there was no ladder for safe transition to and from the top bunk in Plaintiff's cell from February to April 2021.

**Any other claim that is mentioned in the Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.[2]**

**Count 1**

Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment when they respond to an inmate's serious medical need with deliberate indifference. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017); *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). Here, Plaintiff's allegation that he required use of a low bunk permit for immobility and pain associated with ankle and foot injuries is sufficient to show an objectively serious medical need at screening. *See Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013).

Deliberate indifference occurs where an official "knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Plaintiff's allegations support claims of deliberate indifference against Nurse Practitioner Luking, who allegedly revoked Plaintiff's low bunk permit without examining him on February 10, 2021, and Warden Brookhart, who allegedly turned a blind eye to his emergency grievance(s) complaining of extreme pain, requesting a doctor's treatment "A.S.A.P.," and seeking

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

reinstatement of his medical permit.³  Therefore, Count 1 shall receive further review against Defendants Luking and Brookhart.

This claim, however, will be dismissed against all other defendants.  When denying Plaintiff a low bunk, Sergeant Seed deferred to the judgment of Nurse Practitioner Luking who decided that a low bunk permit was no longer necessary on February 10, 2021. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).  The allegations refer to no subsequent interactions between Plaintiff and Sergeant Seed about this issue.  Thus, Plaintiff's allegations do not state a viable claim against Seageant Seed in Count 1.

Plaintiff's allegations also do not suggest that the third shift security officer (presumably Defendant "John/Jane Doe") knew about Plaintiff's prior injuries or low bunk permit when ordering him to return to his bunk and stop "screwing up [the] count." (Doc. 19, p. 13).  Plaintiff also failed to name this person as a defendant, instead identifying Defendant "John/Jane Doe" as a "placement officer."  Count 1 will be dismissed with respect to this individual.

Nurse Ulrey's words and actions following Plaintiff's return from the hospital do not amount to deliberate indifference.  Despite making allegedly harsh comments, Nurse Ulrey appropriately placed Plaintiff in the infirmary while he recovered from his fall and issued him a medical permit for a low bunk before he left the infirmary.  Count 1 will also be dismissed against the nurse.

---

³ Warden Brookhart received numerous *prior* complaints from Plaintiff.  In response to his request to "fix" the issue with the medical permit revocation on February 10, 2021, the warden referred him to the HCU for treatment of his pain with ibuprofen and placement on the doctor's call list for further consideration of the low bunk permit request.  When Plaintiff's complaints of "constant pain" went unanswered on February 15, February 21, February 28, and March 4, 2021, Warden Brookhart intervened and notified the HCU about them.  All of this occurred before Plaintiff's first emergency grievance complaining of ongoing "extreme pain" that required treatment "A.S.A.P." and issuance of a medical permit.  This suggests that the warden was aware of the issues and turned a blind eye to them in March and April 2021.

Finally, as a private medical corporation, Wexford can only be held liable under § 1983 if it had a policy or practice that caused the alleged violation of Plaintiff's constitutional rights to occur. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). The allegations in the Amended Complaint do not suggest that such a policy or practice existed. Therefore, Count 1 shall also be dismissed against this defendant.

In summary, Count 1 shall receive further review against Nurse Practitioner Luking and Warden Brookhart, but this claim shall be dismissed without prejudice for failure to state a claim against Sergeant Seed, Placement Officer John/Jane Doe, Nurse Ulrey, and Wexford.

**Count 2**

An inmate's Eighth Amendment claim for unconstitutional conditions of confinement requires exposure to conditions posing a "substantial risk of serious harm" to the inmate's health or safety and a defendant's knowledge and conscious disregard of that risk. *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). A bunk bed that lacks ladders and steps is insufficient to support an Eighth Amendment claim. *Withers*, 710 F.3d at 691-92 (collecting cases) (noting the "absence of ladders is a common feature of prison bunk beds"). Thus, courts routinely dismiss such claims because this single feature does not pose a serious risk of harm. *See Richard v. Illinois Dep't of Corr.*, No. 16-cv-00069-NJR, 2016 WL 2941210, at *5 (S.D. Ill. May 20, 2016) (collecting cases). Therefore, Count 2 will be dismissed with prejudice for failure to state a claim for relief against any defendant.

**Request for Injunctive Relief**

Plaintiff seeks reinstatement of his original permit, but also alleges that he was already issued another low bunk *and* low gallery permit. Moreover, he is no longer housed at Lawrence and has not explained what has changed. Therefore, his request for injunctive relief is **DENIED**

**without prejudice.**

## Disposition

The Amended Complaint (Doc. 19) survives screening pursuant to 28 U.S.C. § 1915A. **COUNT 1** will receive further review against **NURSE PRACTITIONER LUKING** and **WARDEN DEANNA BROOKHART**, in their individual capacities.

**COUNT 1** is **DISMISSED** without prejudice against **WEXFORD HEALTH SERVICES, SERGEANT SEED, NURSE ULREY**, and **JOHN/JANE DOE**, and **COUNT 2** is **DISMISSED** with prejudice against **ALL DEFENDANTS** for failure to state a claim upon which relief may be granted. All **OFFICIAL CAPAACITY** claims are **DISMISSED** without prejudice.

The Clerk shall prepare for Defendants **LUKING** and **BROOKHART**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 19), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**Consistent with the above, the Clerk of Court is DIRECTED to ENTER the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED.**

DATED:   June 1, 2023                    *s/ Staci M. Yandle*
                                         **STACI M. YANDLE**
                                         **United States District Judge**

### Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.