**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CLIFTON JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:22-cv-00147-GCS** |
| | ) | |
| **DEANNA BROOKHART and CARISSA LUKING,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Pending before the Court are Defendant Carissa Luking's motion for summary judgment, (Doc. 73, 74, 82), and Defendant Deanna Brookhart's motion for summary judgment. (Doc. 76, 77, 85).[1] Plaintiff opposes the motions. (Doc. 80, 84). Based on the reasons delineated below, the Court **GRANTS** the motions for summary judgment.

Plaintiff Clifton Jackson, a former inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this action under 42 U.S.C. § 1983 for deprivations of his

[1] Along with the motions for summary judgment, Defendants filed the required Federal Rule of Civil Procedure 56 notices informing Plaintiff of the consequences of failing to respond to the motions for summary judgment and what is required in responding to motions for summary judgment. (Doc. 75, 78).

civil rights. (Doc. 1). On July 16, 2024, the Court allowed Plaintiff to proceed only on Count II of his Second Amended Complaint against Defendants Luking and Brookhart for exhibiting deliberate indifference to Plaintiff's serious medical need for a low bunk permit from February to April 2021. (Doc. 61).

Defendant Luking maintains she is entitled to summary judgment as Plaintiff cannot set forth any evidence she was deliberately indifferent to Plaintiff's serious medical need, nor did Plaintiff suffer any injury caused by her. Defendant Brookhart argues the same; she further claims she is entitled to qualified immunity. Plaintiff counters that the evidence shows Defendants Luking and Brookhart were deliberately indifferent to his serious medical needs. Plaintiff asserts he suffered unnecessary and wanton infliction of pain and suffering due to the cancellation of his lower bunk permit. His pain and suffering could have been avoided had Defendant Luking not canceled the permit. Plaintiff also claims that Defendant Brookhart was aware he needed the lower bunk permit. Based on the reasons delineated below, the Court grants the motions for summary judgment.

## UNDISPUTED FACTS[2]

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

At all times relevant, Plaintiff was an inmate with the IDOC and housed at Lawrence Correctional Center ("Lawrence"). Defendant Carissa Luking was a Nurse Practitioner at Lawrence and Defendant Deanna Brookhart was the Warden at Lawrence.

In the 1990's Plaintiff was hit by a car and injured his right leg and ankle. He underwent surgical repair of his ankle which included hardware as well as a skin graft.

Plaintiff testified he was able to bear weight on the ankle and was able to walk up steps despite the history of his right ankle.

Plaintiff's medical records indicate Plaintiff was issued an indefinite low bunk permit on November 21, 2017.

A low bunk permit is an official authorization given to a prisoner to be assigned a lower bunk.

---

2 In response to Defendants' motions for summary judgment, Plaintiff did not address/mention any of Defendant Brookhart's assertions of material facts in violation of Local Rule 56(b)(1). This is despite the fact that Defendants provided Plaintiff with the required notices of the consequences of failing to respond. (Doc. 75, 78). Local Rule 56.(1)(g) additionally provides: "[a]ll material facts set forth in a Statement of Material Facts or a Statement of Additional Material Facts shall be deemed admitted for the purposes of summary judgment unless specifically disputed." SDIL-LR 56.1(g). Further, Local Rule 56(j) states in part: "[t]his Local Rule applies equally to represented and *pro se* parties. . . ." Thus, the opposing party must respond to the movant's statement of facts. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). As Plaintiff did not respond/dispute Defendant Brookhart's material facts, the Court deems them admitted for the purposes of this motion for summary judgment.

On February 10, 2021, Plaintiff was housed in Unit R4-A-L at Lawrence and assigned to Cell 16 on the lower bunk.

Plaintiff's medical records also indicate that on February 10, 2021, Defendant Luking conducted a chart review of Plaintiff's medical file in order to evaluate his need for a low bunk permit. Defendant Luking determined Plaintiff did not meet the requirements for a low bunk permit. Thus, there was no medical need for his low bunk permit.[3] Plaintiff's permit was discontinued that day. Plaintiff disputes her findings.

Plaintiff was ordered to pack his things and move to Cell three of Unit R4-A-L. When Plaintiff arrived at Cell three, another inmate was assigned to the lower bunk. Plaintiff informed Sergeant Sneed of the conflict. Plaintiff claims Sergeant Sneed called healthcare and was told by Defendant Luking that Plaintiff was no longer eligible for a low bunk permit. Plaintiff asked Sergeant Sneed to tell Defendant Luking to give him something in writing that indicated Plaintiff was no longer eligible for a low bunk permit. Plaintiff received a copy with Defendant Luking's name on it saying she had taken his bottom bunk pass.

Also, on February 10, 2021, Plaintiff submitted a question to the healthcare staff unit and Defendant Brookhart, which sought an examination by a doctor and for someone to fix the revocation of the low bunk permit.

---

[3] In order for an inmate to be eligible for a low bunk permit, an inmate must meet one of the following criteria: (1) offenders over the age of 60; (2) offenders with diagnosed seizure disorders; (3) offenders that are morbidly obese; (4) offenders with amputations; (5) offenders with paralysis; (6) offenders that have an injury requiring a wheelchair or crutches; or (7) if stated on the physician approved treatment protocols for injuries.

Plaintiff was seen by a nurse on February 22, 2021, for right foot discomfort. Grimacing with weightbearing was noted. He was given ibuprofen to manage the pain in his ankle and Plaintiff was referred to be seen by a doctor. During his deposition, Plaintiff testified that pain intermittingly occurred when the weather changed.

On March 17, 2021, Plaintiff filed a grievance regarding medical treatment. In the grievance, Plaintiff stated he wanted to see a doctor A.S.A.P. and he wanted his bottom bunk restored. However, he also marked the grievance as non-emergent. He further indicated he spoke to "Major Whalyn and Warden Brookhart who did there [sic] part in also referring said issue to healthcare and medical still has not called me as of today 3-18-2021."

Plaintiff treated with Defendant Luking on April 8, 2021, for complaints of right foot pain. He reported he had an indefinite low bunk permit since being incarcerated and that he needed one. Defendant Luking noted Plaintiff did not have current edema, redness, warmth or deformity in Plaintiff's right ankle that would limit his gait or activities of daily living. Plaintiff disputes this note and maintains it was clear that by looking at his leg he had a deformity, showing a massive injury. Defendant Luking referred Plaintiff for an x-ray of his right ankle, issued him ibuprofen, and referred him to the doctor for his overall need for a low bunk permit. She further educated Plaintiff on the fact he did not meet the specific criteria for a low bunk permit. However, she told Plaintiff the doctor may deem it appropriate.

On April 19, 2021, a counselor responded to the grievance and indicated that since the filing of the grievance, Plaintiff had been seen in the healthcare unit on more than one occasion.

On April 24, 2021, Plaintiff was getting off the top bunk when the stool he was standing on tipped over causing him to fall down. He hit his head on the wall resulting in back and neck pain. Plaintiff was placed on a stretcher and taken to the healthcare unit. Plaintiff was taken to the local emergency room and had x-rays of his cervical spine, thoracic, and lumbar spine, a CT scan of his head, and a CT scan of his cervical spine. All scans came back negative for acute injury. He was prescribed Methocarbamol.[4] Plaintiff returned to Lawrence that same evening.

Plaintiff was seen by Dr. Doris Williams on April 28, 2021, for complaints of lower back spasms. Dr. Williams diagnosed Plaintiff with persistent back spasms secondary to lumbosacral strain and changed his prescription from Methocarbamol to Cyclobenzaprine.[5] The next day, Plaintiff treated with Dr. Williams. He reported his back was feeling better. She diagnosed him with mild discomfort of his lumbar spine and an acute lumbosacral strain. She ordered Plaintiff to continue with current medications in anticipation of his probable discharge from the infirmary.

---

4 Methocarbamol is a prescription muscle relaxant used to treat muscle pain and stiffness.

5 Cyclobenzaprine is a muscle relaxant used for the short-term treatment of muscle spasms.

On April 30, 2021, Plaintiff had an x-ray of his right foot and ankle. It revealed mild osteoarthritis of the ankle joint and great toe but no acute bony fracture or dislocation. The bony alignment was normal. That same day, Plaintiff received a new medical permit for assignment to lower bunk on a low gallery and was released from the infirmary.

Plaintiff does not have medical training.

Plaintiff testified he believes Defendant Brookhart would have known that he needed a low bunk permit because during one of her monthly tours of the cell block, Defendant Brookhart called the Healthcare Unit Administrator to Plaintiff's door and told Plaintiff to explain what happened. Plaintiff does not recall the date of this meeting, but it was between March and April 2021. Plaintiff does not recall speaking with Defendant Brookhart other than this one time. Plaintiff does not have copies of any written requests or letters he sent to Defendant Brookhart about the need for a low bunk permit. He believes he wrote one kite to Defendant Brookhart, and it would have been sent to Defendant Brookhart before he actually spoke to her.

Plaintiff testified he does not believe a nurse practitioner has the authority to revoke a low bunk permit. He also testified he has no evidence to support this belief.

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Gupta v. Melloh*, 19 F.4th 990, 997

(7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025) (citing *Anderson*, 477 U.S. at 255). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Smith v. City of Janesville,* 40 F.4th

816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *Burton v. Kohn L. Firm, S.C.,* 934 F.3d 572, 579 (7th Cir. 2019) (internal citation omitted).

**B. Deliberate Indifference**

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Donald v. Wexford Health Sources, Inc.,* 982 F.3d 451, 457-458 (7th Cir. 2020) (citations omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"— not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

To prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part

test. *See Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (citations omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Johnson*, 5 F.4th at 824. *Accord Whitaker v. Dempsey*, 144 F.4th 908, 916 (7th Cir. 2025) (citations omitted). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019) (citations omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Johnson*, 5 F.4th at 824. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (citations omitted). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Lockett*, 937 F.3d at 1023. *See also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere

negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Eagan v. Dempsey*, 987 F.3d 667, 688 (7th Cir. 2021) (citations omitted). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did[.]" *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (citations omitted). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Non-medical prison staff, meanwhile, are generally "entitled to relegate to the prison's medical staff the provision of good medical care[.]" *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Thus, non-medical prison staff may be held liable under § 1983 only if they have "a reason to believe (or have actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett v. Webster*, 658 F.3d

742, 755 (7th Cir. 2011). The relevant inquiry turns on the prison official's subjective state of mind. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc).

**DISCUSSION**

**A. Defendant Luking**

For the purposes of this motion and based on the record before the Court, the Court finds the injury to Plaintiff's foot which requires a low bunk permit constitutes an objectively serious medical need. However, based on that same record and construing the evidence in the light most favorable to Plaintiff, the Court finds there is no evidence in the record to show that Defendant Luking was deliberately indifferent to Plaintiff's serious medical need regarding the revocation of the lower bunk permit.

The record reveals Defendant Luking provided appropriate medical treatment to Plaintiff. On February 10, 2021, Defendant Luking reviewed Plaintiff's medical file/chart, determined Plaintiff did not meet the *specific* criteria for a low bunk permit, and discharged Plaintiff's low bunk permit. The evidence does not reveal that Defendant Luking revoked the low bunk permit for non-medical reasons or despite knowing that doing so would expose Plaintiff to a substantial risk of serious harm.

Further, she saw Plaintiff on April 8, 2021, for complaints of right foot pain and provided the following treatment:

- Issued Plaintiff ibuprofen.
- Referred Plaintiff for x-ray of his right ankle.
- Educated Plaintiff on why he did not meet the specific criteria for low bunk permit but noted the doctor may still deem one appropriate.
- Referred Plaintiff to doctor to assess overall need for low bunk permit.

It is true that Defendant Luking discontinued Plaintiff's low bunk permit on February 10, 2021. However, on April 8, 2021, she referred Plaintiff for an x-ray, prescribed ibuprofen, and referred him to a doctor for evaluation of a low bunk permit. Defendant Luking's actions demonstrate ongoing attention to Plaintiff's medical concerns and an effort to investigate and address his complaints. There is nothing to suggest the treatment Plaintiff received from Defendant Luking was "so blatantly inappropriate as to evidence intentional mistreatment." *Greeno v. Daly*, 414 F.3d 645, 654 (7th Cir. 2005) (citation omitted). Moreover, Plaintiff has offered no evidence to support his assertion that the low bunk permit should not have been canceled. Although Defendant Luking *initially* did discontinue Plaintiff's low bunk permit, that in and of itself is insufficient to permit a reasonable jury to find deliberate indifference. *See, e.g.*, *Snipes*, 95 F.3d at 592 (stating that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim."). Even construing the evidence in the light most favorable to Plaintiff, the Court finds no reasonable jury could conclude that Defendant Luking was deliberately indifferent to Plaintiff's serious medical needs regarding his low bunk permit. Thus, the Court finds that Defendant Luking is entitled to summary judgment.[6]

---

[6] In her reply brief, Defendant Luking also moved to strike Exhibit B, Wexford Health Source Provider Handbook labeled "Confidential – Subject to General Protective Order," from Plaintiff's response. (Doc. 82, p. 3-7). The Court denies this motion. Defendant argues that the Court should strike this exhibit as she did not provide this document to Plaintiff, that she is uncertain as to how he obtained it, and that Plaintiff should have disclosed to her during discovery that he had this document. Specifically, Defendant contends that because the top of the document states "Confidential – Subject to General Protective Order," it must be stricken and Plaintiff should be admonished to

**B. Defendant Brookhart**

Lastly, the Court addresses Plaintiff's claim against Defendant Brookhart. Construing the record in the light most favorable to Plaintiff as it must, the Court concludes it does not contain evidence that Defendant Brookhart was subjectively aware of Plaintiff's serious medical needs and ignored them. In fact, Plaintiff's own testimony fails to establish this standard. As to Defendant Brookhart's knowledge of his need for a low bunk permit, Plaintiff testified as to the following:

> Q. Okay. I believe that you allege that she had knowledge that you needed a low bunk permit. So, how is it that she would have had knowledge that you needed a low bunk permit.
> A. Because she monthly makes – she brings all her staff on each deck, and if you need to talk to any one of them, any one of her staff – she comes to the door. If you are out, you are able to talk to her. So, she pulled up on my door

---

obey court orders. The Court concludes there is no indication that Plaintiff violated a Protective Order applicable to this case. Consequently, absent any explanation as to how Plaintiff obtained this document, the Court questions how Defendant can assume that Plaintiff was subject to and violated a different court's protective order by filing this document. Rather, to the extent Defendant is concerned that a protective order in a different case has been violated, she should pursue remedies in the proceeding involving that protective order. *See, e.g.*, *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 302–303 (N.D. Ill. 1993), *order clarified,* 153 F.R.D. 614 (N.D. Ill. 1993) (stating that "[t]his Court's power to control discovery does not extend to material discovered in other cases."). Ultimately, absent a showing that Plaintiff came about this document by improper means, the Court does not believe that merely labeling it as confidential in another proceeding protects it from disclosure in this proceeding. *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (stating that "[a]s in this case, such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes."). Further, the Court declines to strike Exhibit B for Plaintiff's failure to disclose this document in discovery. This document is not relevant to the specific facts/outcome of this case and clearly Defendant is aware of the contents of this document. Thus, the Court finds no prejudice to Defendant Luking.

– it is on camera. I explained to her what the situation was. She called the Healthcare Administrator to my door and told me explain what was going on, and which I did. They said that they was going to take care of it, and they never did.

Q. Okay. Do you have any idea what date that was?

A. This had to be – me and Jakeem Savage was in the cell. This had to be around – between March and April, and I think that she only does this like once every month.

Q. Okay.

A. She brought her staff around.

Q. Other than you talking to her one time at the front of your cell, can you recall any other time at the front of your cell, can you recall any other time that your spoke with her between February of 2021 and April of 2021?

A. No, ma'am.

Q. Ok, did you send any Kites between February of 2021 and April 2021,

A. Yes, I did.

Q. Do you have any copies of those?

A. No, I don't.

Q. Can you tell me when you sent her a Kite?

A. I can't recall, but I do know that she was the reason the move was being put in place.

Q. The move when you and Mr. Savage moved.

A. As far as me moving out of the cell with me and Jakeem Savage – I mean, to me moving out of the cell with me and Bobby Battles to me moving over in the cell with Jakeem Savage.

Q. Can you tell me all of that again? You cut out.

A. I do know she was the reason why I was being moved from the cell with Bobby Battles to the cell with me and Jakeem Savage.

Q. Okay. Let's talk about that just for a second because you were with Mr. Savage when you had to use the top bunk, right?

A. Yes, ma'am.

Q. Okay. So, anything that happened with Mr. Battles was before your low bunk was taken, wasn't it?

A. That's right, correct.

Q. Okay. You testified that you sent several requests directed to Healthcare, and correct me if I am wrong, but those requests were in your Amended Complaint as being sent or dated February 15th, February 21st, February 18th, and March 4th. Were any of those requests also sent to Ms. Brookhart?

Q. I can't recall.

Q. Part [sic] me?

A. I cannot recall.

> Q. Okay. And you don't have copies of any other written requests or letters that you sent to Ms. Brookhart about needing a low bunk permit; is that correct?
> A. No, ma'am.
> Q. I am correct in saying that you don't have copies of those, right?
> A. Yes, ma'am, you are correct.

(Doc. 77-1, p. 17). This testimony reveals that Defendant Brookhart referred Plaintiff's issue to medical personnel rather than ignoring it or refusing to act upon it. Moreover, Plaintiff identifies only one written request he sent to Defendant Brookhart on February 10, 2021, concerning his need for a low-bunk permit despite stating he sent several. However, he does not have copies, cannot recall when the requests were sent, and does not recall whether these requests identified in his Amended Complaint were directed to Defendant Brookhart. Aside from the single conversation at his cell door in either March 2021 or April 2021, Plaintiff did not have any other discussions regarding this issue with Defendant Brookhart. Further, in his March 17, 2021 non-emergent grievance Plaintiff stated that Defendant Brookhart did her part in referring Plaintiff to the healthcare unit.

At most, the evidence demonstrates Defendant Brookhart was aware of Plaintiff's issue and referred the matter to the healthcare staff. The Court finds that Plaintiff has not presented evidence from which a reasonable jury could conclude that Defendant Brookhart was deliberately indifferent to his serious medical needs or turned a blind eye towards Plaintiff's medical situation. Thus, Defendant Brookhart is entitled to summary judgment as well.[7]

---

[7] As the Court finds that Defendant Brookhart is entitled to summary judgment, the Court need not address the issue of qualified immunity.

## CONCLUSION

Accordingly, the Court **GRANTS** the motions for summary judgment (Doc. 73, 76). The Court **FINDS** in favor of Defendants Deanna Brookhart and Carissa Luking and against Plaintiff Clifton Jackson on Count 2 of the Amended Complaint. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED**.

**DATED: August 27, 2026.**

Digitally signed by Judge Sison
Date: 2026.08.27 14:38:35 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**